**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**HELENA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>vs.<br><br>CARRIE PFLEGER ROBERTSON,<br>INDIVIDUALLY and as PERSONAL<br>REPRESENTATIVE OF THE<br>ESTATE OF JOSEPH ROBERTSON,<br><br>                    Defendants. | No.  CV 17-54-H-SEH<br><br><br>**FINDINGS OF FACT,**<br>**CONCLUSIONS OF LAW,**<br>**AND ORDER** |

**INTRODUCTION & BACKGROUND**

This action was commenced by the United States on May 15, 2017.[1] Joseph

Robertson and Carrie Pfleger Robertson were named as Defendants. The prayer

for relief stated in the Complaint sought:

---

[1] *See* Doc. 1.

1.      Enter judgment declaring that Defendants' unauthorized use of and encroachment onto Forest Service lands detailed above constitutes an unlawful trespass on the property of the United States in violation of 16 U.S.C. § 551 and regulations promulgated thereunder and in violation of the regulations governing the surface land of the unpatented mining claims;

2.      Grant permanent injunctive relief restraining Defendants' from unlawful use of or encroachment onto a federal lands located on the Beaverhead-Deerlodge National Forest and directing him to remove any unauthorized structures or personal property currently occupying Forest Service lands within 60 days of such injunction; and if such property is not removed within 60 days, it may be deemed abandoned and removed or disposed of at the discretion of the Forest Service;

3.      Grant the United States damages in an amount equal to the cost of restoring and rehabilitating the property to its pre-existing condition and for other damages caused by the unauthorized activities of the Defendants', if they do not cure the unlawful use and encroachment within 60 days of an order to do so;

4.      Award the United States post-judgment interest at the statutory rate; and

5.      Pursuant to 28 U.S.C. § 2412(b), award costs and attorneys' fees; and further relief as this Court deems proper.[2]

---

[2] Doc. 1 at 8–9.

A case scheduling order was entered on November 1, 2017,[3] which

established the following pretrial schedule:

| | |
|---|---|
| Amendments of pleadings under Fed. R. Civ. P. 15  and joinder of parties under Fed. R. Civ. P. 19 or 20 on or before: | December 1, 2017 |
| Plaintiff shall disclose, provide, and file reports of liability and damage experts: (1) in compliance with Fed. R. Civ. P. 26(a)(2); and (2) in compliance with and as specified in paragraph 7 of this Order, on or before: | March 23, 2018 |
| Defendant shall disclose, provide, and file reports of liability and damage experts: (1) in compliance with Fed. R. Civ. P. 26(a)(2); and (2) in compliance with and as specified in paragraph 7 of this Order, on or before: | April 27, 2018 |
| Plaintiff shall serve and file Fed. R. Civ. P. 26(a)(2)(A) and C disclosures of all non-retained experts in compliance with and as specified in paragraph 8 of this Order, on or before: | March 23, 2018 |
| Defendant shall serve and file Fed. R. Civ. P. 26(a)(2)(A) and C disclosures of all non-retained experts in compliance with and as specified in paragraph 8 of this Order, on or before: | April 27, 2018 |
| Discovery closes: | June 22, 2018 |

---

[3] *See* Doc. 21.

Discovery motions, with supporting briefs,
shall be filed no later than 10 days following
the moving party's compliance with
Fed. R. Civ. P. 26(c)(1) and 37(a)(1).

All pretrial motions, other than discovery motions,
shall be filed and fully briefed on or before:          August 24, 2018

An attorneys' conference to discuss the
final pretrial order preparation on or before:          October 12, 2018

Proposed final pretrial order on or before:             October 26, 2018[4]

The deadline for filing of a proposed final pretrial order was suspended by Order

of October 24, 2018.[5]

On May 8, 2018, Plaintiff filed United States' Renewed Motion for

Summary Judgment.[6] A hearing on the motion was held on September 24, 2018.

On November 1, 2018, the Court issued its Memorandum and Order,[7] which

recited certain facts found by the Court to be undisputed for purposes of Plaintiff's

Renewed Motion for Summary Judgment:

> 1.    Defendants Joseph and Carrie Robertson
> ("Robertsons") "own and reside on a patented mining claim
> on the Jefferson [Ranger] District of the Beaverhead-

---

[4] Doc. 21 at 1–3.

[5] *See* Doc. 98 at 2.

[6] Doc. 33.

[7] Doc. 100.

Deerlodge National Forest near Basin, Montana" ("White Pine claim").

2.     The White Pine claim is bordered on three sides by federal land within the Beaverhead-Deerlodge National Forest and on a fourth side by an un-patented mining claim ("Mohawk claim").

3.     In October of 2006, the United States Forest Service ("USFS") conducted an investigation of a suspected trespass on federal land surrounding the White Pine claim.

4.     "On April 23, 2007, Forest Service Law Enforcement officer John Janik issued multiple citations to Joseph Robertson for unauthorized occupation of [National Forest System ("NFS")] land adjacent to the White Pine claim."

5.     On June 9, 2007, Janik returned to conduct a follow-up investigation and found that the property stored in trespass had not been removed. Janik documented the continued violations.

6.     "On August 9, 2007, [Joseph] Robertson was tried in absentia and found guilty on five violations." Final judgment was entered on August 14, 2007, and he was ordered to pay a $2,625 fine.

7.     "In September of 2010, the Forest Service completed a survey of the boundary between the [White Pine] claim . . . and NFS land." The September 2010 survey confirmed that a portion of the Robertsons' barn, a variety of vehicles, equipment, and other materials were on NFS land.

8.    The Mohawk mining claim was closed December 30, 2010 for failure to pay annual maintenance fees.

9.    On August 31, 2011, "John Janik returned to the vicinity of the Robertsons' White Pine claim" and documented continuing violations that had first been discovered by Janik in 2006.

10.   On June 26, 2012, United States Magistrate Judge Lynch found Joseph Robertson guilty of, *inter alia*, "use or occupancy of NFS lands without authorization." "Robertson was sentenced to 6-months unsupervised probation."

11.   "On October 24, 2013, while investigating [Joseph] Robertson's compliance with his sentence conditions . . . continued trespass on [NFS] lands was documented. Additional documentation of trespass on the White Pine claim occurred on July 31, 2012, October 24, 2013, November 6 and 15, 2013, May 20, 2014, October 16, 2014, May 8 and 14, 2015, and July 27, 2015.

12.   On October 9, 2015, the USFS notified Defendants that a USFS agent had observed unauthorized surface activity on the Mohawk claim. "Defendants were directed to cease activity and submit a Plan of Operations." "To date, the [USFS] has not approved a Plan of Operations from the Robertsons."

14.   On October 12, 2017, the Bureau of Land Management sent a letter informing Defendants that the Mohawk claim "was declared null and void."

15.     Robertsons do not currently have any unpatented mining claims on the Beaverhead-Deerlodge National Forest.[8]

The Court also ordered, on November 1, 2018, and in the absence of any material fact in dispute in the record:

1.     Plaintiff's Renewed Motion for Summary Judgment is GRANTED;

2.     Defendant's unauthorized use of and encroachment onto NFS land constitutes an unlawful trespass on the property of the United States in violation of 16 U.S.C. § 551 and regulations promulgated thereunder;

3.     Defendants are permanently enjoined from unlawful use of or encroachment onto federal land located on the Beaverhead-Deerlodge National Forest;

4.     Defendants shall remove any and all unauthorized structures or personal property occupying NFS land within 30 days of the date of this Order. If such property is not removed, it may be deemed abandoned and removed or disposed of at the discretion of the USFS, the costs of which may be assessed against Defendants.

5.     If Defendants do not remove trespassing property as ordered in paragraph 4, and if Plaintiff is required to restore the surface property, it is entitled to reimbursement for restoration and rehabilitation costs for land damaged by the trespass. If such restoration and rehabilitation costs are warranted, Plaintiff shall submit to the Court a bill of costs for the completion of such

---

[8] Doc. 100 at 4–7 (citations omitted).

necessary removals and for restoration of land damaged by
the trespass.

6.     Plaintiff is entitled to costs authorized by law.[9]

On December 13, 2019, Plaintiff filed United States' Motion for Award of

Costs,[10] which provided:

> The Court's November 1, 2018 Memorandum and Order
> directed Defendants to remove their unauthorized
> structures or personal property from National Forest
> System land within 30 days of the Order. If the Defendants
> did not, the Court permitted Plaintiff United States to
> remove the property and request costs incurred for
> restoration and rehabilitation. The United States now
> requests such costs in the amount of $48,532.44.[11]

Joseph Robertson died on March 18, 2019.[12] On January 31, 2020, the Court

ordered substitution of Carrie Robertson, as the Personal Representative of the Estate

of Joseph Robertson, in replacement of Joseph Robertson.[13]

A trial before the Court to address all remaining unresolved issues was

scheduled and held on July 8, 2020. Post-trial proposed supplemental findings of

fact and conclusions of law were filed on July 15, 2020, and July 17, 2020, as

---

[9] Doc. 100 at 10–11 (citation omitted).

[10] Doc. 102.

[11] Doc. 102 at 1–2 (citations omitted).

[12] *See* Doc. 106.

[13] *See* Doc. 110 at 2.

permitted by Order of the Court.[14] The evidentiary record presented by both parties was complete upon conclusion of the trial. Subject to the Court's findings of undisputed facts, established on the record and memorialized in the Court's Memorandum and Order,[15] each party has been accorded full opportunity to present all evidence deemed by counsel to be relevant to the issues to be decided.

Upon complete review of the totality-of-the-evidence record, and upon full consideration of the parties' submissions to the Court as supplemental proposed findings of fact and conclusions of law, the Court enters, from the record, findings of fact and conclusions of law in supplement to those entered November 1, 2018, as follows:

## FINDINGS OF FACT

### I.   Background

1.   The United States agreed to extend the date to clear the trespassing property for 30 days until the end of December 2018.[16] Neither Joseph  nor Carrie Robertson requested an extension from the Court to allow more time to clear the

---

[14] *See* Docs. 147 and 148.

[15] Doc. 100.

[16] *See* Doc. 143-2.

trespassing property.[17]

2.      In August of 2019, more than nine months after the Court's Order

requiring the removal of the trespass materials, Carrie Robertson received a letter

from the United States notifying her that the trespass condition still existed.[18]

3.      Removal of the trespass property was scheduled to take place in two

phases.[19] Phase I was to be completed in the fall of 2019, with Phase II to be

carried out the following fiscal year when more funding became available.[20]

4.      In October 2019, the USFS contracted with Rehbein Enterprises Inc.,

of Polson, Montana, known by the USFS to be a reliable contracting company,[21] to

remove the trespass property from the Phase I removal area.[22] Rehbein's

employees had been issued the 40-hour hazardous waste operations certification

required by the Occupational Safety and Health Administration ("OSHA") in 29

C.F.R. §§ 1910.120(e)(3)(i), 1910.120(e)(4) to conduct cleanup operations if

---

[17] *See* Doc. 144 at 88:21-23, 90:15-20, 119:18-25.

[18] *See* Doc. 144 at 80:04-14.

[19] *See* Docs. 144 at 36:02-05 and 142-4.

[20] *See* Doc. 144 at 36:05-17.

[21] *See* Doc. 144 at 33:07-21.

[22] *See* Doc. 142-5 at 1–3.

potentially hazardous materials were present at the cleanup site.[23]

5.     Rehbein began the removal process on October 8, 2019.[24] All phases of the project were completed on October 17, 2019.[25]

## II.     Cost Findings

6.     On July 29, 2019, Sonny Thornborrow, Assistant Regional Environmental Engineer for Region I of the USFS,[26] visited the site and coordinated the trespass removal and restoration.[27]

7.     An aerial photo marked with property lines showed the existence of trespass materials along an access road running across USFS property near the White Pine claim.[28] The trespass included a portion of a pole barn.[29]

8.     Photos from the trespass site showed, among other things, a trailer, a skidder, a backhoe, a bucket of roof cement, electrical equipment, a propane tank, scrap, potentially hazardous materials, a semi-truck cab, parts of a saw mill,

---

[23] *See* Doc. 144 at 33:07-21, 121:14-20.

[24] *See* Doc. 142-6 at 1.

[25] *See* Doc. 142-8 at 1.

[26] *See* Doc. 144 at 11:11-14.

[27] *See* Docs. 144 at 16:15 and 142-2.

[28] *See* Doc. 142-1.

[29] *See* Doc. 142-1.

engines and parts, boats and parts, oil-contaminated soil, bicycles, fuel tanks, and the aforementioned pole barn.[30]

9.     Some of the trespass-site materials identified by Thornborrow included an unlabeled barrel containing an unknown powdered substance and a bucket of roof cement labeled as containing asbestos,[31] both of which were identified as potentially containing hazardous waste material that could require special removal and disposal procedures.[32] Also present on the site was a backhoe with a hydraulic leak leaking into the soil.[33]

10.     Under USFS policy, the cleanup project was governed by OSHA regulations that required a 40-hour hazardous material training for all workers on any contaminated site.[34]

11.     Thornborrow had difficulty in determining the extent of the soil contamination and other hazardous conditions present on the site.[35] The presence of both the known and the unidentified hazards on-site required removal by a

---

[30] *See* Doc. 142-2 at 4–19.

[31] *See* Doc. 144 at 17:17-23, 23:02-24.

[32] *See* Docs. 144 at 17:07-25 and 142-3 at 4.

[33] *See* Doc. 144 at 19:04-07.

[34] *See* Doc. 144 at 25:22–26:09, 65:06-11.

[35] *See* Doc. 144 at 27:07-17.

contractor whose workers had completed the required OSHA 40-hour hazardous waste operations training.[36]

12.     Thornborrow estimated, after the July 29, 2019, site visit that the cost to complete the entire project—Phases I and II—would be around $50,000.[37] This estimate was revised upward to approximately $100,000, after receiving Rehbein's initial bid and recalculating the costs of removal,[38] including revised dumping procedures,[39] and costs of removing a portion of the trespassing pole barn using specialized equipment.[40]

13.     On August 13, 2019, Thornborrow returned to the site to collect a sample of the unknown powdered substance for analysis by Pace Analytic Services.[41] During this visit, Thornborrow observed that the site appeared to be unchanged from the July 27, 2019, visit and that there was no indication that any trespass property had been removed.[42]

---

[36] *See* Doc. 144 at 27:16–28:01.

[37] *See* Doc. 144 at 32:04.

[38] *See* Doc. 144 at 33:22–34:03.

[39] *See* Doc. 144 at 33:22–35:14.

[40] *See* Doc. 144 at 25:14–26:09.

[41] *See* Docs. 144 at 28:14–29:05 and 142-3 at 6, 11.

[42] *See* Doc. 144 at 28:10-21, 119:18-25.

14.     Pace Analytic Services later confirmed no hazardous material was found in the unknown powdered substance sample.[43]

15.     The USFS paid Pace Analytic Services $740.00 for the sample analysis.[44]

16.     On October 2, 2019, the USFS awarded a sole source contract to Rehbein for removal of the trespass materials in Phase I,[45] at an estimated cost of $51,074.88 for the trespass material removal.[46]

17.     The barrel of unknown powdered substance was removed by Carrie Robertson and two others on the first day of the cleanup.[47]

18.     Rehbein began the removal process on October 8, 2019.[48] It used four vehicles and five pieces of heavy equipment to fulfill the contract.[49]

19.     On October 8, 2019, Carrie Robertson and two others were moving trespass property from Phase I onto adjacent private land when Rehbein workers

---

[43] *See* Docs. 144 at 31:08-12 and 142-3 at 6–29.

[44] *See* Doc. 142-3 at 5.

[45] *See* Doc. 142-5.

[46] *See* Doc. 142-5 at 1.

[47] *See* Doc. 144 at 61:21–62:02.

[48] *See* Docs. 144 at 37:18–38:03 and 142-6.

[49] *See* Docs. 142-6 and 142-7.

arrived at the site.[50] Thornborrow and the contracting representative from Rehbein called the USFS Contracting Officer on October 8, 2019, to discuss the changed circumstances, particularly that Carrie Robertson had removed part of the trespass property from Phase 1.[51] The revised plan of action was modified to have Rehbein finish any work in Phase I before proceeding to Phase 2.[52]

20.    Rehbein resumed the removal process on October 16, 2019.[53] It was completed by the end of October 17, 2019.[54]

21.    Thornborrow estimated that Carrie Robertson removed about half of all the trespassing property from both phases.[55] Carrie Robertson was credited for the entire phase 2 amount plus $4,225.68 "reduced from the phase 1 award of $51,000."[56]

22.    On October 25, 2019, Rehbein reduced the total contract amount

---

[50] See Doc. 142-6 at 1.

[51] See Doc. 144 at 39:11-19, 46:07-23.

[52] See Doc. 144 at 39:11-19, 46:07-23.

[53] See Doc. 144 at 41:23–42:05.

[54] See Docs. 144 at 45:04-05, 142-7, and 142-8.

[55] See Doc. 144 at 74:22-23.

[56] See Doc. 144 at 119:11-13.

remaining due by $4,225.68, to a net contract amount of $45,084.20.[57]

23.     The USFS paid Rehbein a total of $45,084.20 on the removal

contract.[58]

24.     Total cost for the removal and remediation resulting from the

Robertson trespass was $48,532.44, including: $2,708.24 for USFS employee

time; $740.00 for hazardous materials testing; and $45,084.20 for the Rehbein

contract.[59]

## CONCLUSIONS OF LAW

25.     "Damage remedies for trespass are essentially compensatory and not

punitive."[60] A plaintiff may recover "damages that proximately and naturally flow

from the trespass."[61]

26.     Damages for common-law trespass against the United States are

governed by state law.[62] The typical measure of damage to real property—the

---

[57] *See* Doc. 142-5 at 6–7.

[58] *See* Docs. 144 at 119:05-09 and 142-5 at 8.

[59] *See* Doc. 142-9.

[60] *Hammond v. Cty. of Madera*, 859 F.2d 797, 804 (9th Cir. 1988) (citing *Bourdieu v. Seaboard Oil Corp.*, 119 P.2d 973 (1941)) (plaintiff entitled to reasonable remuneration for the use of the land).

[61] *Hammond*, 859 F.2d at 805.

[62] *See Mason v. United States*, 260 U.S. 545, 555 (1923).

difference in the market value of real property immediately before and immediately after damage occurs—is not the sole measure of damage available under Montana law.[63] A plaintiff may instead, in appropriate cases, elect to recover the cost of reasonable restoration to the damaged property.[64] "An 'appropriate case' for restoration damages involves temporary damage and reasons personal to the plaintiff to restore property to its former condition."[65] A damage is temporary if the property can be restored "to substantially the condition in which it existed before the injury,"[66] and sufficient personal reasons to restore the property may exist where a plaintiff demonstrates a desire to continue using the property rather than sell it.[67] This is such a case.

27.     The damages related to trespass in this case were temporary, and given the stewardship obligations of the USFS for National Forest lands, restoration damages apply, as allowed by Montana law.

28.     Defendants failed to remove the trespass materials in a timely

---

[63] *See Lampi v. Speed*, 261 P.3d 1000, 1004 (Mont. 2011) (citations omitted).

[64] *See Lampi*, 261 P.3d at 1004–05 (citation omitted).

[65] *See Lampi*, 261 P.3d at 1005 (quoting *Restatement (Second) of Torts* § 929 cmt. b).

[66] *See Lampi*, 261 P.3d at 1006 (citing *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1086 (Mont. 2007)).

[67] *See Lampi*, 261 P.3d at 1006–07.

manner. The Defendants did not request, nor did the Court grant, an extension of time in which to remove the trespass materials.

29.     The USFS had the right to remove the trespass material, to restore USFS lands to their previous state, and to recover its costs.

30.     The government's total cost of $48,532.44 is the appropriate measure of trespass damages flowing naturally and proximately from the trespass.

31.     The amounts paid by the USFS for removal of trespass material and restoration of the property were reasonable and necessary expenses to place the USFS in the position it had been in prior to the trespass.

ORDERED:

1.     Defendant Carrie Pfleger Robertson and the Estate of Joseph Robertson are jointly and severally liable to the United States for removal of trespass material and property restoration in the amount of $48,532.44.

2.     The Clerk is directed to enter judgment accordingly.

DATED this __7th__ day of August, 2020.


Sam E. Haddon
SAM E. HADDON
United States District Judge